■ In the Matter of JOSEPH DOLCEMASCHIO, Respondent, v CITY OF NEW YORK et al., Appellants.—Order and judgment (one paper), Supreme Court, New York County (Stanley Parness, J.), entered March 21, 1991, which granted the petition and directed respondents, *inter alia,* to reinstate petitioner to the position of probationary Correction Officer, unanimously reversed, on the law, the determination of the Committee on Uniformed Personnel (COUP) is reinstated, and the petition dismissed, without costs.

Petitioner, Joseph Dolcemaschio, was appointed as a Correction Officer on February 24, 1986, subject to a one-year probationary period. On August 1, 1986, petitioner was injured while intervening in a fight between two inmates, and was

granted sick leave until September 17, 1986. Upon returning, petitioner continued to complain of pain, and was placed on Medical Monitored Return (MMR) status, or light duty, from September 26, 1986 to March 6, 1987.

On June 27, 1987, approximately four months after petitioner returned to full duty, he struck his head on a telephone box when he bent down to pick up his memo book, and was again placed on sick leave. Upon reporting to work on MMR status, on July 24, 1987, petitioner complained that he was still in pain, and his sick leave was extended to August 19, 1987. Thereafter, petitioner resumed MMR status until Dr. Arthur Tomases examined him on November 19, 1987, and determined that he was capable of performing slightly heavier duty. As a result, petitioner's medical restrictions were upgraded from no inmate contact to restricted inmate contact.

Upon being informed that his medical restrictions had been relaxed and that he would be transferred from the Health Management Division at Rikers Island to the Brooklyn House of Detention for Men, petitioner went to the MMR Coordinator, Correction Officer Richard Palmer, and demanded an explanation. When told that the doctor had upgraded his medical restrictions, petitioner retorted, "He can't change my restrictions without my doctor's approval. Who the f___ does he think he is?"

This incident was reported to the Director of the Health Management Division, Leon Silverberg, who met with petitioner and Captain Frank Carrello on the following day. During the meeting, petitioner became, "boisterous and insubordinate", and stormed out, threatening legal action. The report of Silverberg described petitioner as "upset and yelling" profanities and threats, while "walk[ing] and mov[ing] with no apparent difficulty or pain. He did not wear a cervical collar, did not use a cane, and turned, twisted, and raised his arms freely."

Following the November 20 incident, petitioner remained on MMR status until December 23, 1987, when he returned to full duty. In the interim, petitioner was charged with violations of Departmental Rules and Regulations on the basis of insubordination, and it was recommended that he be terminated for the insubordination, as well as for poor attendance, reluctance to accept assignments, prior violations, and "questionable injury", all of which occurred during petitioner's probationary period.

On January 17, 1988, COUP unanimously approved the

recommendation of discharge, and petitioner's employment was terminated for poor attendance and insubordination on January 22, 1988. The record reveals that, in the approximately one year and nine months that petitioner had been employed, he had been out sick for 75 days and on MMR status for over 10 months.

In a prior CPLR article 78 proceeding seeking reinstatement, the IAS court remanded for clarification as to the basis for the discharge. In February 1990, COUP reviewed petitioner's records, and its nine members voted to sustain the termination on grounds of insubordinate behavior, poor attendance, and MMR record. The IAS court granted petitioner's subsequent petition, holding that COUP's decision was arbitrary, capricious, and made in bad faith. We reverse.

The law is well established that a probationary employee may be discharged without a hearing or a statement of reasons, so long as the discharge is effected in good faith and is not predicated upon constitutionally impermissible grounds *(Matter of York v McGuire,* 99 AD2d 1023, 1024, *affd* 63 NY2d 760, 761; *Matter of Sheridan v Ward,* 125 AD2d 274, *lv denied* 69 NY2d 609; *Matter of Rainey v McGuire,* 111 AD2d 616, 618). The petitioner bears the burden of making this showing *(Tomlinson v Ward,* 110 AD2d 537, 538, *affd* 66 NY2d 771). Contrary to the finding of the IAS court, the record before us yields no support for petitioner's claim that respondents acted in bad faith or for constitutionally impermissible reasons. Rather, it is clearly established that petitioner's employment was terminated for excessive absences, lengthy periods of restricted duty, and insubordination consisting of violent outbursts and the use of abusive and profane language in dealing with superiors. As a probationary employee, petitioner could be discharged for any one of these reasons, and was not entitled to a hearing before any such termination *(Matter of Rainey v McGuire, supra; Matter of Sheridan v Ward, supra).* Concur—Murphy, P. J., Carro, Milonas, Asch and Kassal, JJ.